**Bonjean Law Group, PLLC**
**1000 Dean St., Ste. 422**
**Brooklyn, New York 11238**
**Tel: (718) 875-1850**
**Fax: (718) 230-0582**
jennifer@bonjeanlaw.com

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

**EMILY WEINMAN**,

       Plaintiff,

                                **COMPLAINT**
                                **AND JURY TRIAL DEMAND**

    v.

**OFFICER THOMAS CANNON;**
**OFFICER ROBERT JORDAN;**
**LIEUTENANT KENNETH GALLAGHER;**
**AND THE CITY OF WILDWOOD,**

       Defendants.

    **NOW COMES** Plaintiff, EMILY WEINMAN by and through her attorney the

**BONJEAN LAW GROUP, PLLC**, and for cause of action against the defendants, both jointly

and severally, respectfully states as follows:

### INTRODUCTION

    1.    On May 25, 2018, 20-year-old Plaintiff Emily Weinman was brutally and

senselessly assaulted by Defendants CANNON and JORDAN on Wildwood Beach as her 18-

month-old daughter looked on.

    2.    With no legal justification, Defendants CANNON and JORDAN assaulted

Plaintiff for no other reason than she refused to provide her last name to the beach patrol officers

as they attempted to investigate the ownership of a few *unopened* bottles of Twisted Teas that were propped against a cooler near Plaintiff's beach blanket.

3.      Even after Plaintiff voluntarily took and passed a breathalyzer test, the Defendant officers continued to escalate the interaction with Plaintiff rather than just confiscating and disposing of the alcoholic beverages.

4.      Incredibly, after Plaintiff refused to provide her last name to Defendant CANNON, he told her that she was going "to get dropped" and then proceeded to chase her and violently bring her to the ground as she screamed for help. Defendants CANNON and JORDAN physically assaulted Plaintiff by forcefully pushing her face and head into the sand, pulling her hair, twisting her arms, placing their full body weight on her, choking her, and eventually striking her in the face and head area with closed fists.

5.      Plaintiff was arrested for a number of disorderly persons offenses but was later charged with indictable offenses based on fabricated statements of Defendants CANNON and JORDAN and false and fabricated grand jury testimony of Defendant GALLAGHER.

6.      Plaintiff eventually pled guilty to a single, petty disorderly persons offenses. All other charges were dismissed.

7.      As a result of Defendants' egregious violation of Plaintiff's constitutional rights, Plaintiff suffered physical injuries, pain, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages

## **PARTIES**

8.      Plaintiff is a 22-year-old adult resident of Philadelphia, Pennsylvania.

9.      Defendants CANNON, JORDAN, and GALLAGHER are and were at all times relevant herein, officers, employees and agents of the Wildwood Police Department, a municipal

agency of the City of Wildwood. Defendants CANNON, JORDAN, and GALLAGHER are being sued individually and in their official capacities. At all times relevant herein, Defendants CANNON, JORDAN, and GALLAGHER were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the Police Department and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the court of their duties. They were acting for and on behalf of the city at all times relevant herein with the power and authority vested in them as officers, agents, and employees of the City of Wildwood and incidental to the pursuit of their duties as officers, employees, and agents of the City.

10.     Defendant CITY OF WILDWOOD is a municipality chartered by the State of New Jersey and as such is a political subdivision of the State of New Jersey and among its other functions operates and maintains a law enforcement agency known as the Wildwood Police Department. The CITY OF WILDWOOD is under a duty to run its policing activities in a lawful manner so as to  preserve the rights, privileges, and immunities guaranteed and secured to them by the  Constitutions and laws of the United States and the State of New Jersey.

## JURISDICTION AND VENUE

11.     Each and all of the acts of defendants were performed under the color and pretense of the constitutions, statutes, ordinances, regulations, customs, and usages of the United States of America, the State of New Jersey, and the City of Wildwood, and under authority of their office as police officers for the City of Wildwood.

12.     The incidents which give rise to this cause of action occurred within this jurisdiction within three years of the filing of this Complaint.

13.     Venue is proper in this venue pursuant to 28 U.S.C. § 1391as all of the defendants are residents of this district and/or all of the acts or omissions which give rise to this cause of action occurred within this district.

14.     Jurisdiction is proper pursuant to federal question jurisdiction, 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3)(4) and 42 U.S.C. § 1983. Plaintiff further invokes the pendent and supplemental jurisdiction of this Court to hear and decide claims arising under state law pursuant to 28 U.S.C. § 1367.

15.     Plaintiff avers that defendants do not have immunity for violating civil rights of citizens.

## FACTUAL ALLEGATIONS

16.     Plaintiff hereby incorporates, in their entirety, each and every paragraph contained in this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

17.     On May 25, 2018, Plaintiff, then 20-years old, went to Wildwood Beach in Wildwood, New Jersey with her boyfriend and their 18-month-old daughter to celebrate the Memorial Day weekend. They were joined by a female friend.

18.     At approximately 4:11 p.m., Defendants CANNON and JORDAN, both Class II Special Law Enforcement Officers, were patrolling the beach and stopped to question Plaintiff as she was relaxing on a beach blanket, eating cut watermelon with her friend.

19.     According to Defendants CANNON and JORDAN, they stopped to interview the two young women because they observed unopened bottles of alcoholic beverages, known as Twisted Teas, propped beside a cooler near where Plaintiff and her friend were seated.

20.     Plaintiff told the Defendants that the alcoholic beverages did not belong to her and consented to taking a breathalyzer test. The test showed that neither Plaintiff nor her friend had consumed alcohol. Neither of the young ladies presented as intoxicated or under the influence of any controlled substance.

21.     Rather than simply confiscate the alcohol, Defendant CANNON directed Plaintiff to contact the owner of the alcohol and direct her to return to the beach towel.

22.     Plaintiff grabbed her cell phone and walked a few feet away from the blanket to make a phone call. Defendant CANNON directed Defendant JORDAN to grab Plaintiff and return her to the beach towel.

23.     Once Plaintiff returned to the beach towel, the Defendants continued to interrogate the young women; both cooperated by providing their names and ages to the Defendants.

24.     However, when Plaintiff refused to provide her last name to Defendant CANNON, he became increasingly agitated and threatening. Plaintiff questioned why she was obligated to provide the Defendant with her last name if she had not consumed any alcohol and was not committing any crimes.

25.     No probable cause existed to arrest Plaintiff at that point, and she was under no legal obligation to provide Defendants with her last name.

26.     Angry that Plaintiff refused to provide her last name to the officers, Defendant CANNON announced that he "was done with her" and began to aggressively march toward her, putting Plaintiff in fear of an imminent assault. Plaintiff, only 5'2" and just over 100 lbs., began to retreat in fear, screaming out for her boyfriend's assistance.

27.     Defendant CANNON then yelled at Plaintiff that she was "about to get dropped," meaning that he was going to knock her to the ground and physically assault her.[1] Defendant CANNON's threat of violence was captured on his body-worn camera footage.

28.     At no point did Defendant CANNON or JORDAN tell Plaintiff that she was being placed under arrest. In fact, Defendant CANNON made it clear by telling Plaintiff she was "about to get dropped" that he was intending to assault her - not arrest her.

29.     After Defendant CANNON "dropped" Plaintiff, violently throwing her to the ground, both Defendant CANNON and JORDAN began to physically assault Plaintiff in a number of ways, including shoving her face into the sand so she could not breathe, twisting her arms, pulling her hair, choking her by firmly pressing a forearm against her throat that noticeably distorted Plaintiff's screams and hindered her breathing. Defendant CANNON finished off the beating by repeatedly delivering closed-fist strikes to Plaintiff's head with great force.

30.     A portion of the assault can be viewed at https://www.nbcnews.com/news/us-news/woman-punched-officer-videotaped-new-jersey-beach-arrest-accepts-plea-n972141

31.     Defendant was eventually handcuffed and transported to the Wildwood police station. She was charged with disorderly conduct, resisting arrest, and obstruction of justice – all disorderly persons offenses.

32.     Some beach-goers caught a portion of the assault on video and began to share the video to social media. Almost immediately, the video went "viral" with both local and national media re-publishing the video and causing significant commentary about the incident. The public, almost universally, questioned the reasonableness of the Defendant officers' conduct.

---

[1] The expression "to get dropped" means "To knock someone over, usually associated with the first hit in a fight." https://www.urbandictionary.com/define.php?term=drop (last visited on 10/12/2019)

33.     Aware that the incident could lead to civil (or even criminal) liability, along with other negative consequences for the officers and the department, Defendants CANNON and JORDAN agreed, expressly or implicitly, to exaggerate the level of resistance offered by Plaintiff to justify their unreasonable and excessive use of force.

34.     Defendants CANNON and JORDAN promptly consulted with higher ranking officers from the Wildwood police department for the purpose of getting assistance in drafting a narrative about the incident in a formal investigative report.

35.     Defendant CANNON authored a police report that falsely claimed that Plaintiff struck him and kicked him and his partner Defendant JORDAN in the genitalia. Defendant CANNON falsely reported that Plaintiff spit toward Officer Hillman as she was being transported. Defendant CANNON also swore out a false Complaint Summons, claiming that Plaintiff appeared to be under the influence of drugs or alcohol. Defendants CANNON and JORDAN knew that Plaintiff was not under the influence of any substance and had not acted in a manner consistent with being under the influence of any intoxicating substances.

36.     The Defendants and other higher-ranking Wildwood police personnel agreed that they should fabricate an account of what transpired to justify falsely charging Plaintiff with indictable offenses in part to lend greater justification to the Defendants' unreasonable use of force. This plan to over-charge Plaintiff would also provide Defendants with leverage against Plaintiff, pressuring Plaintiff to admit guilt to a disorderly persons offense so as to avoid the risk of prison time if she had to defend herself at trial on an indictable offense. The goal was to ensure that Plaintiff pled guilty to some offense, because by securing a guilty plea to any of the charges, Plaintiff's chances of a successful civil prosecution would be reduced.

37.     Defendants employed the age-old law enforcement doctrine of "hurt a man; charge a man" as a way of protecting themselves and the department from potential criminal and civil liability.

38.     To carry out this conspiracy, Defendant CANNON not only made false statements in his police report and sworn complaint summons, but Defendant GALLAGHER repeated those false statements in sworn testimony before a grand jury to secure trumped-up charges against Plaintiff.

39.     Specifically, Defendant GALLAGHER testified falsely to the following:

- [the defendant] struck Officer Cannon with an open left hand

- [the defendant] "attempted to kick the officers and eventually did, in fact, kick Officer Jordan full force in the testicles, as well as did kick Officer Cannon.

- During the arrest, the defendant was spitting at officers

- While the officers were placing [the defendant] in a police vehicle, she spit at Patrolman Hillman.

40.     Plaintiff was subsequently charged with a litany of additional indictable offenses including two counts of aggravated assault, throwing bodily fluids in the third degree, resisting arrest in the third degree, and hindering apprehension in the fourth degree.

41.     Plaintiff later pled guilty to a single, petty disorderly persons offense for disorderly conduct. The trial court granted her a civil reservation.

**Wildwood Police Department**

42.     The Wildwood Police Department has approximately 38 full-time sworn police officers. Despite the relatively small size of the department, its police personnel uses force at far higher rates than most other law enforcement departments in the state.

8

43.     From 2012 to 2016, the department reported 456 total uses of force. Of a total of 468 police departments in the State of New Jersey, the Wildwood Police Department used force at a higher rate than 388 police departments in the state. For uses of force, Wildwood is in the top 20% of departments for highest uses of force in the state.

44.     Indeed, the department's uses of force has steadily increased since 2014.

45.     On information and belief, at the time of the underlying incident, the Wildwood police department was not adequately tracking problem officers through a fully functioning early warning system.

46.     On information and belief, the Wildwood police department's internal affairs function did not/does not comply with New Jersey's Attorney General Guidelines and uses the internal affairs function to protect officers from misconduct rather than remediate it. In 2013, the New Jersey ACLU conducted a widespread study examining whether New Jersey Internal Affairs Police Departments were following Attorney General Guidelines with respect to Internal Affairs process. The ACLU found that most departments in the stated failed to follow New Jersey Attorney General guidelines when investigating internal affairs civilian complaints.

47.     On information and belief, the department does not initiate internal affairs investigations into excessive force and that when they do the department rarely if sustains them. In fact, in *all* of Cape May County, a total of only three (3) internal affairs complainst for excessive force were sustained between a four year period of 2014 through 2017.

48.     The City's reckless disregard and indifference to its use of force problem has resulted in a number of federal civil lawsuits for excessive force, not including this one. *See, e.g., Araromi v. Middle Township Police Dept., Wildwood Police Dept., et al.,* 10 CV 1048; *Carey v.*

*City of Wildwood, et al.* 12 CV 1298, *Lenart v. City of Wildwood, et al.,* 16 CV 4296, *Piccolo v. City of Wildwood, et al.,* 18 CV 15226. This list does not take into account any lawsuits brought in state court for excessive force or related claims or lawsuits that do not name the municipality as a party.

49.     Additionally, Wildwood police officers are not trained to de-escalate minor conflicts with civilians, but rather are encouraged to arrest civilians simply for showing lack of respect. Wildwood officers are encouraged to assault and arrest civilians for the fictional crime of 'contempt of cop' and then justify their conduct with fabricated claims.

50.     After this incident, the Chief of Police and even the Mayor of the City of Wildwood doubled down on their officers' unreasonable use of force, finding that the officers acted in accordance with their policies.

51.     The *de facto* policies and practices of the department were the moving force behind the Defendants' unconstitutional conduct.

<u>**COUNT I**</u>
**42 U.S.C. § 1983 – Excessive Force**

Plaintiff hereby incorporates, in their entirety, each and every paragraph of this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

52.     Defendants committed the above described actions and/or omissions under the color of law and by virtue of their authority of law enforcement officers for the City of Wildwood, and substantially deprived Plaintiff of her clearly established rights, privileges, and immunities guaranteed to her as a citizen of the United States in violation of 42 U.S.C. § 1983, and deprived plaintiff of her rights guaranteed to her under the Fourth Amendment to the United States Constitution.

53.     As set out in detail above, Defendants CANNON and JORDAN deprived Plaintiff of her Fourth Amendment rights to be free from unreasonable, unnecessary, and excessive force by subjecting her to merciless threats and an aggressive physical attack and beating.

54.     Defendants' conduct was unjustified and unreasonable.

55.     As a direct and proximate result of the acts and omissions of Defendants, Plaintiff's constitutional rights were violated and Plaintiff suffered injuries, including, but not limited to, physical injury, pain, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

### COUNT II
### 42 U.S.C. § 1983 – Due Process: Fabricated Evidence Claim

56.     Plaintiff hereby incorporates, in their entirety, each and every paragraph of this complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

57.     Defendants committed the above described actions and/or omissions under the color of law and by virtue of their authority of law enforcement officers for the City of Wildwood, and substantially deprived Plaintiff of her clearly established rights, privileges, and immunities guaranteed to her as a citizen of the United States in violation of 42 U.S.C. § 1983, and deprived plaintiff of her rights guaranteed to her under the Fourteenth Amendment to the United States Constitution.

58.     As set out in detail above, Defendants CANNON and JORDAN authored reports that included fabricated evidence and CANNON further swore out a complaint summons containing false statements. Similarly, as set out above in detail in paragraph 39 *supra*, Defendant GALLAGHER falsely testified before a grand jury and used fabricated evidence to secure false and fabricated charges against Plaintiff.

59.     Although Plaintiff did not go to trial, absent the fabricated evidence identified above, Plaintiff would not have been charged with the following indictable offenses: two counts of aggravated assault, throwing bodily fluids in the third degree, resisting arrest in the third degree, and hindering apprehension in the fourth degree.

60.     As a direct and proximate result of the acts and omissions of Defendants, Plaintiff's constitutional rights were violated and Plaintiff was injured. Plaintiff suffered injuries, including, but not limited to, anxiety, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

## COUNT III
### 42 U.S.C. § 1983 – Failure to Intervene

61.     Plaintiff hereby incorporates, in their entirety, each and every paragraph of this complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

62.     In the manner described above, one or more of the Defendant officers, and other unknown individuals, stood by and without intervening to prevent the alleged constitutional violations, despite having an opportunity to do so.

63.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with willful indifference to Plaintiff's constitutional rights, and in total disregard of the truth and Plaintiff's innocence for the indictable offenses.

64.     As a direct and proximate result of this failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered injuries, including, but not limited to, physical injury, pain, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

## COUNT IV
### 42 U.S.C. § 1983 – Conspiracy

65.     Plaintiff hereby incorporates, in their entirety, each and every paragraph of this complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

66.     Defendants CANNON and JORDAN, reached an agreement amongst themselves to physically assault Plaintiff and use unreasonable and unnecessary force against her in retaliation for showing them disdain and contempt, conduct that is not unlawful.

67.     All of the individual defendant officers, along with other co-conspirators, known and not yet known to Plaintiff, reached an agreement amongst themselves to fabricate false evidence in the form of witness statements and testimony for the purpose of framing Plaintiff for indictable offenses that she did not commit.

68.     In this manner, the defendant officers, acting in concert with other known and unknown co-conspirators, conspired to accomplish an unlawful purpose by an unlawful means.

69.     In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant joint activity.

70.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and with willful indifference to Plaintiff's constitutional rights.

71.     As a direct and proximate result of this of this illicit agreement referenced above, Plaintiff suffered injuries, including but limited to physical injury, pain, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

## COUNT V
### 42 U.S.C. § 1983 – *Monell Claim*

73.     Defendant CITY OF WILDWOOD is under a duty to supervise the members of the Wildwood Police Department and to ensure that the policing activities of the Wildwood Police Department are run in a lawful manner preserving to the citizens and visitors of the City of

Wildwood the rights,  privileges, and immunities guaranteed to them by the Constitutions of both the United States of America and the State of New Jersey.

74.     Defendant CITY OF WILDWOOD permitted, encouraged, tolerated, and knowingly  acquiesced to an official pattern, practice, and/or custom of its police officers, particularly those named in this lawsuit, of violating the constitutional rights of the public at large, including the Plaintiff. In particular, the CITY OF WILDWOOD had actual knowledge that defendants had a propensity to deprive the citizens and visitors of Wildwood, New Jersey of their constitutional rights and  failed to take proper action to protect the citizens and visitors of Wildwood, New Jersey from defendants.

75.     The actions of the CITY OF WILDWOOD were unjustified, unreasonable, unconstitutional, and deprived Plaintiff of her constitutional rights in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

76.     Defendant CITY OF WILDWOOD is directly liable for the Plaintiff's damages due to the  following policies, practices, or customs of the Wildwood Police Department, which were in   effect at the time of this incident and which were the underlying cause of the Plaintiffs' injuries:

a.     The City of Wildwood and the Wildwood Police Department have a permanent and well-settled practice or custom of allowing police officers (including CANNON and JORDAN) to use unreasonable, unnecessary, and excessive force without fear of discipline against citizens and visitors, creating an atmosphere of illegal and unconstitutional behavior in   deliberate indifference and reckless disregard for the welfare of the public at large, including  Plaintiffs.

b.     The City of Wildwood and the Wildwood Police Department have a permanent

and well-settled practice or custom allowing police officers (including CANNON, JORDAN, and GALLAGHER) to file false police reports, fabricate evidence, destroy evidence, and make false statements as a tool to conceal their own illegal and unreasonable conduct in deliberate indifference and reckless disregard for the welfare of the public at large,  including Plaintiff.

c.      The City of Wildwood and the Wildwood Police department have a permanent and well-settled practice of failing to protect the citizens and visitors of Wildwood from the  unconstitutional actions of police officers by discouraging the filing of civilian complaints, refusing to meaningfully investigate civilian complaints, by mislabeling complaints involving serious and/or criminal charges as administrative complaints, concealing misconduct committed by officers by re-naming their misconduct with ambiguous labels, ultimately exonerating officers clearly guilty of policy and/or criminal violations thereby creating an atmosphere of illegal and unconstitutional  behavior in deliberate indifference and reckless disregard of the welfare of the public at large, including the Plaintiff.

d.      The City of Wildwood and the Wildwood Police Department have a permanent and well-settled practice of refusing to adequately respond to and investigate complaints regarding officer misconduct by the citizenry, including, but not limited to complaints regarding excessive force thus creating an atmosphere of illegal and unconstitutional behavior in deliberate indifference and reckless disregard to the welfare of the public at large, including Plaintiff.

e.      The City of Wildwood and the Wildwood Police Department have a permanent and well-settled practice of allowing rogue officers to corrupt the Internal Affairs

investigations by promulgating false and fabricated evidence, making patently false statements, and by destroying evidence, creating an atmosphere of illegal and unconstitutional behavior in deliberate indifference and reckless disregard to the welfare of the public at large, including Plaintiffs.

77.     Defendant CITY OF WILDWOOD is directly liable for Plaintiff's damages due to the following policies or customs of inadequate training, supervision, discipline, screening, or hiring, which were in effect at the time of this incident and which were the underlying cause of the Plaintiff's injuries:

a.      As set out above in detail, the City of Wildwood and the Wildwood police department failed to adequately train police officers (including CANNON and JORDAN) regarding use of force and de-escalation, and such failure to train had the obvious consequence of leading to constitutional violations including those perpetrated against Plaintiff in deliberate indifference and reckless disregard of the welfare of the public at large, including Plaintiff;

b.      As set out in detail above, the City of Wildwood and the Wildwood police department failed to adequately supervise, monitor, evaluate, the performance of its officers (including CANNON and JORDAN) and their compliance with the laws and policies, practices and customs with respect to use of physical force in deliberate indifference to and reckless disregard of the public at large, including the Plaintiff;

c.      The City of Wildwood and the Wildwood Police Department repeatedly and knowingly failed to properly discipline its officers (including CANNON and JORDAN) with respect to violations of the law of the State of New Jersey, the Constitution of the United States, and its own policies on use of force, creating a pattern, policy, practice,

custom or atmosphere where such illegal and  unconstitutional behavior is tolerated, condoned, and accepted by the Wildwood Police  Department in deliberate indifference to and reckless disregard of the public at large, including the Plaintiff.

d.       The City of Wildwood and the Wildwood Police Department allow its officers to engage in conduct that violates the constitutional rights of persons in custody, including Plaintiff, without fear of reprimand, discipline or termination, creating an atmosphere where  such unconstitutional behavior is ratified, tolerated, and condoned, in reckless disregard of and  deliberate indifference to the welfare of the public, including Plaintiff; and

e.       The City of Wildwood and the Wildwood Police Department knew that "a code of silence" existed between and among their officers whereby officers would not report misconduct of other officers to their superiors and failed to take steps necessary to break the  "code of silence" which includes, but is not limited to, properly supervising officers, properly investigating critical incidents, holding officers accountable for misconduct and failing to report  misconduct, creating an atmosphere where officers violate the constitutional rights of the public  at large in deliberate indifference to and in reckless disregard of the constitutional rights of the  pubic, including the Plaintiff.

78.       Further, Defendant CITY OF WILDWOOD is liable for the actions of the individual Wildwood defendant officers under its non-delegable duty to provide  officers who comply with the constitutions and laws of the United States of America and the State of New Jersey.

79.       As a direct and proximate result of the foregoing policies, practices, and customs of the CITY OF WILDWOOD and the Wildwood Police Department, violations of the

constitutional rights of the citizens of the City of Wildwood were substantially certain to occur.

80. As a direct and proximate result of the foregoing policies, practices, and customs of the CITY OF WILDWOOD and the Wildwood Police Department, Plaintiff's constitutional rights were violated and Plaintiff was injured and damaged.

<u>COUNT VI</u>
**State Law Claim – Assault and Battery**

81. Plaintiff hereby incorporates, in their entirety, each and every paragraph of this complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

82. The acts, omissions and conduct of Defendants CANNON and JORDAN constitutes an assault and battery against Plaintiff.

83. Specifically, Defendant CANNON intended to cause the plaintiff imminent apprehension of a harmful contact when the he chased, harassed and threatened physical harm to the Plaintiff.

84. Defendant CANNON intended to cause Plaintiff an offensive contact when he chased her, threatened violence against her, tackled her, pulled her hair, rammed her face into the sand, choked her, and punched her repeatedly. Plaintiff was put in imminent apprehension by CANNON'S conduct.

85. Defendant JORDAN intended to cause Plaintiff an offensive contact when he pinned her down while Defendant CANNON brutally attacked her.

86. There was no legal justification for Defendants CANNON'S and JORDAN'S conduct of threatening physical violence against Plaintiff, chasing her, tackling her, pinning her down, pulling her hair, shoving her face into the sand, choking her and punching her repeatedly.

87. As a direct and proximate result of the aforementioned acts and omissions of Defendants, Plaintiff suffered injuries and damages.

## COUNT VII
### State Law Claim – Civil Conspiracy

88.    Plaintiff hereby incorporates, in their entirety, each and every paragraph of this complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

89.    Defendants CANNON and JORDAN, reached an agreement amongst themselves to physically assault Plaintiff and use unreasonable and unnecessary force against her in retaliation for showing them disdain and contempt, conduct that was not unlawful.

90.    All of the individual Defendant officers, along with other co-conspirators, known and not yet known to Plaintiff, reached an agreement amongst themselves to fabricate false evidence in the form of witness statements and testimony for the purpose of framing Plaintiff for indictable offenses that she did not commit.

91.    In this manner, the defendant officers, acting in concert with other known and unknown co-conspirators, conspired to accomplish an unlawful purpose by an unlawful means.

92.    In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

93.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and with willful indifference to Plaintiff's constitutional rights.

94.    As a direct and proximate result of this of this illicit agreement referenced above, Plaintiff suffered injuries, including but limited to physical injury, pain, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

## PUNITIVE DAMAGES

Plaintiff hereby incorporates, in its entirety, each and every paragraph of this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

95.     The actions and/or omissions of Defendants CANNON and JORDAN complained of herein were unlawful, conscience shocking, unconstitutional, and performed maliciously, recklessly, intentionally, willfully, wantonly, in bad faith, and in such a manner to entitle the Plaintiff to a substantial award of punitive damages against Defendants.

## DAMAGES

Plaintiff hereby incorporates, in its entirety, each and every paragraph contained in this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

96.     As a direct and proximate result of the aforementioned actions and omissions of the Defendants, Plaintiff was injured and damaged. The damages for which Plaintiff seeks compensation from the Defendants, both jointly and severally, include, but are not limited to, the following:

       a.     physical pain, emotional pain and suffering of a past, present, and future nature;

       b.     loss of enjoyment of life of a past, present, and future nature;

       c.     fright, fear, aggravation, humiliation, anxiety, and emotional distress of a past, present, and future nature as a result of the injuries sustained as a result of the illegal actions of Defendants CANNON, JORDAN, and GALLAGHER;

       d.     preclusion of defendants from serving in the capacity of law enforcement officers and/or county investigators;

       e.     attorney's fees pursuant to 42 U.S.C. § 1988;

       f.     punitive damage against applicable defendants;

       g.     pre- and post-judgment interest; and

f.      all such relief, both general and specific, to which Plaintiff may be entitled

to under the premises.

## PRAYERS FOR RELIEF

Plaintiff hereby incorporates, in its entirety, each and every paragraph contained in this

Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff sues the defendants

both jointly and severally, for his personal injuries and prays for a judgment against the

defendants for compensatory damages solely in an amount to be determined by a jury as

reasonable and for all such further relief, both general and specific, to which he may be entitled

under the premises.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff sues defendants CANNON,

JORDAN, and GALLAGHER for punitive damages in an amount solely to be determined by a

jury as reasonable and for all such further relief, both general and specific, to which he may be

entitled under the premises.

97.      **A JURY IS RESPECTFULLY DEMANDED TO TRY THE ISSUES ONCE

JOINED.**

Respectfully submitted,

**BONJEAN LAW GROUP, PLLC**
**1000 Dean St., Ste. 422**
**Brooklyn, New York 11238**
**Tel: (718) 875-1850**
**Fax: (718) 230-0582**
**jennifer@bonjeanlaw.com**

By: s/ JENNIFER BONJEAN